**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER BOZYK, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>CANON U.S.A., INC.,<br><br>       Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

   Plaintiff Christopher Bozyk ("Plaintiff") brings this Class Action Complaint on behalf of himself and all others similarly situated against Defendant Canon U.S.A., Inc. ("Defendant" or "Canon"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

**NATURE OF THE ACTION**

   1.  This is a class action brought on behalf of all persons who purchased Canon "All-in-One" Printers.[1] Throughout its marketing and advertising, including on the product packaging for the All-in-One Printers, Canon represents that the Printers are multifunction "all-in-one" devices that can purportedly print, copy, scan, and in some cases, fax documents. As opposed to the "single function" printers it sells, Canon calls these multifunction printers as "3-in-1" or "4-

---

[1] Upon information and belief, the All-in-One Printers at issue include: MAXIFY GX7020, MAXIFY GX6020, PIXMA TS3520, PIXMA G3260, PIXMA G7020, PIXMA G2260, PIXMA MX330, PIXMA MX452, PIXMA MX472, PIXMA TS9520, PIXMA TR8620, PIXMA TS6420, PIXMA TS6320. PIXMA TR4520, PIXMA MG3620, PIXMA MG2522, PIXMA TS3320, PIXMA TS3322, PIXMA TR7020, PIXMA TS9521C, PIXMA TS8320, PIXMA TR8520, PIXMA TR7520, and any and all subsequent and predecessor models (the "All-in-One Printers" or the "Printers"). Plaintiff reserves the right to amend this list if further investigation or discovery reveals that the list should be amended.

in-1" devices, as they purportedly provide three or four functions.  However, the All-in-One

Printers do not scan or fax documents when the devices have low or empty ink cartridges (the

"Design Defect").  When the ink is low, these functions are inexplicably restricted.  As such, the

printers do perform as "all-in-one" devices, and Canon's advertising claims are false, misleading,

and reasonably likely to deceive the public.

2.     Canon does not represent or warn consumers that ink is a necessary component in

order to scan or fax documents.  Nor would reasonable consumers have such an expectation, as

ink is not necessary for scanning or faxing.  As a result, consumers are forced to incur

unexpected and unnecessary burden and expense in the form of ink purchases or in the

alternative be unable to scan or fax documents using the so-called "all-in-one" device.

3.     There is no legitimate reason why scanning or faxing documents should be

restricted when the printer's ink level is low or empty.  No ink is used when scanning or faxing

documents.

4.     Canon knew, or should have known, that its representations and advertisements

regarding the All-in-One Printers were false and misleading, and that they failed to disclose

material information, namely, that the copying, scanning, and printing functions would be

disabled when the printers have low or empty ink cartridges.

5.     If Plaintiff knew that the All-in-One Printers suffered from the Design Defect, he

would not have purchased an All-in-One Printer on the same terms, if at all.

6.     Purchasers of All-in-One Printers have been harmed as a result of Canon's false

representations and omissions.  In addition to monetary damages, Plaintiff seeks injunctive relief

requiring Canon to immediately cease the misleading advertising and marketing campaign and

engage in a corrective campaign to inform consumers of the use of misleading advertising.

7.     Plaintiff's claims are brought as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and all other similarly situated persons.  Plaintiff seeks relief in this action individually and on behalf of purchasers of the All-in-One Printers for: (i) violations of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, *et. seq*, (ii) fraud, (iii) breach of express warranty, and (iv) breach of the implied warranty of merchantability.

## PARTIES

8.     Plaintiff Christopher Bozyk is a citizen of Massachusetts who resides in Springfield, Massachusetts.  In the summer of 2022, Mr. Bozyk purchased a Canon Pixma printer from Walmart in Massachusetts.  Prior to his purchase, Mr. Bozyk saw that his Canon Pixma was labeled as an "All-in-One" device that purportedly had printing, copying, and scanning functionality.  Plaintiff Bozyk saw these representations prior to, and at the time of purchase, and understood them as representations that his Canon Pixma was, in fact, an "All-in-One" device with printing, copying, and scanning functionality.  Plaintiff Bozyk relied on these representations in purchasing his Printer, and these representations were material to Plaintiff Bozyk.  Accordingly, these representations and warranties were part of the basis of the bargain in that, had Plaintiff Bozyk known that his Canon Pixma would not scan when the ink was low or empty, he would not have purchased the Canon Pixma or would have paid significantly less for it.  Indeed, the value of the Printer that Plaintiff Boyzk purchased was materially less than its value as represented by Defendant.  Plaintiff Bozyk did not see any information indicating that his Canon Pixma printer would not scan when the ink was low or empty.  Plaintiff is susceptible to this recurring harm because he cannot be certain that Defendant has corrected this deceptive and false advertising scheme, and he now must continue to buy ink so that his "All-in-One" printer can use the scanning functions.

9.      Defendant Canon U.S.A., Inc. is a New York corporation, with its principal place of business in Melville, New York.  Canon is a wholly-owned subsidiary of Canon, Inc., a Japanese corporation, through which it designs, manufactures, and/or distributes consumer electronics products, including the All-in-One Printers at issue as well as ink cartridges for the All-in-One Printers at issue.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of the proposed class exceed $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and Plaintiff, as well as many members of the proposed class, is a citizen of a state different from Defendant.

11.     This Court has personal jurisdiction over Defendant.  Defendant is headquartered in New York, in this District, regularly conducts business in this District and has extensive contacts with this forum, and has otherwise intentionally availed itself of the New York consumer market through the promotion, marketing, and sale of its products to residents within this District and throughout New York.

12.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Namely, Defendant is headquartered in this District and transacts substantial business in this District.

## COMMON FACTUAL ALLEGATIONS

A.      **Canon Represents That The Printers Are "All-In-One" Devices**

13.     For decades, Canon has imported, marketed, distributed, and sold a wide range of printing, photographic, and imaging equipment and related goods bearing the Canon trademark

to persons and entities throughout the United States. This equipment includes the All-in-One Printers at issue, and these related goods include Canon-branded ink cartridges for the All-in-One Printers at issue.

14.     Through Canon's extensive sales, the public has come to recognize Canon-brand equipment as being of excellent quality and reputation.  By reason of their continued and extensive sales, advertising and promotion, Canon-brand equipment enjoys an excellent reputation among the public.  Indeed, the Canon mark is a symbol of substantial goodwill among consumers.  Accordingly, consumers trust and rely on Canon's marketing and advertising, and reasonably believe that it is truthful and non-deceptive.

15.     Canon's All-in-One Printers are devices marketed and sold as having three core functions: printing, copying, and scanning.  Certain of the All-in-One Printers have an added fax capability feature.

16.     Throughout its marketing and advertising, Canon promotes and promises that the All-in-One Printers provide scanning and faxing as main features and functions.  Canon asserts that consumers should pay extra to purchase these multi-function devices over "single function" devices.

17.     For example, on its website, Canon explains what consumers should consider and why consumers should purchase a Canon single function printer versus a Canon all-in-one:

> Single function or all-in-one
>
> Do you need your printer for just printing purposes, or will you need it for scanning and copying – maybe even faxing – as well? Single-function printers are exactly what the name suggests: their sole job is to print.  Multifunction printers (MFPs) – or All-in-Ones (AIO), 3-in-1-, 4-in-1 – come with scanning and copying capabilities (and, in some cases, faxing).  If you anticipate needing

these capabilities down the road, it may be worth paying a little more up front for the increased functionality.[2]

18.     At its retail website, www.shop.use.canon.com, Canon provides a "filter by option" so consumers can narrow down the number of printers they might wish to consider purchasing.  Among these filters that Canon uses is one it calls "CORE FEATURES."  These so-called core features to filter by are: (1) Print, (2) Copy, (3) Scan, (4) ADF (auto document feeder), and (5) Fax.  Another filter by option Canon provides to consumers looking to purchase a printer is "PRINTER FUNCTIONS."  These so-called printer functions to filter by are: (1) Print Only, (2) Print, Copy, Fax, (3) Print, Scan, Copy, and (4) Print, Scan, Copy, Fax.[3]

19.     Canon states the functionalities of the All-in-One Printers on the product packaging for each device.  For example, on the product packaging of the PIXMA MG2522, Canon represents on each panel of the box that the device functions as a scanner.

---

[2] *Choosing the Best Home Printer for You*, CANON, https://www.canon.ca/en/Articles/2020/Choosing-Best-Home-Printer-for-You

[3] *Shop – Home & Office Printers*, CANON, https://shop.usa.canon.com/shop/en/catalog/home-and-office-printers









20.    On its website, Canon makes similar representations that its All-in-One Printers have core features that include scanning and faxing.  For example, on the webpages for various All-in-One Printers, Canon states:

- "Versatile Printing, Copying & Scanning"[4]

- "Simply print, copy, and scan with the PIXMA TS3520 Wireless All-in-One Printer."[5]

- "Whether it's printing documents and reports, or faxing and scanning, the PIXMA TR8620 is the ultimate compact home office printer that's big on performance and productivity."[6]

- "The TR7020 can handle a variety of tasks with ease, from scanning a signed contract with the ADF to printing homework assignments from virtual classrooms."[7]

- "It's made to handle large workloads efficiently from printing, scanning and faxing documents quickly."[8]

21.    On Amazon.com, Canon makes similar representations that its All-in-One Printers have core features that include scanning and faxing:

- Canon PIXMA MG Series All-in-One Color Inkjet Printer - 3-in-1 Print, Scan, and Copy.[9]

---

[4] *Shop - PIXMA TS9520 Wireless*, CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-ts9520-wireless

[5] *Shop - PIXMA TS3520 Wireless All-in-One Printer Black*, CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-ts3520-wireless-all-in-one-printer-black?gclsrc=aw.ds&gclid=CjwKCAjw3_KIBhA2EiwAaAAlisFs_h5h7n5fG54KfO8UAM038aYR0sIKO2i7kWG YJJBeWfOu1Xb-JxoC81YQAvD_BwE

[6] *Shop - PIXMA TR8620*, CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-tr8620

[7] *Shop - PIXMA TR7020 Black*, CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-tr7020-black

[8] *Shop -PIXMA TR7520 Wireless*, CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-tr7520-wireless-home-office-all-in-one-printer

[9] *Canon PIXMA MG Series All-in-One Color Inkjet Printer*, AMAZON, https://www.amazon.com/Canon-PIXMA-Color-Inkjet-Printer/dp/B08R3WHWV9/ref=sr_1_1_sspa?dchild=1&keywords=canon+pixma+mg2522&qid=1633961120&sr= 8-1-spons&psc=1&spLa=ZW5jcnlwdGVkUXVhbGlmaWVyPUEzSkI1MFFNSVJQWUpMJmVuY3J5cHRlZElkPUExMDE5MTQyMjFFN1Q2R1cxNUhBMSZlbmNyeXB0ZWRBZElkPUEwODc0NjgyMlVQRE9

- Copy and scan multi-page documents fast and easy with the 35-sheet compact Auto Document Feeder (ADF).[10]

- When you need a home office printer that can handle all your work needs from documents, reports, faxing and scanning to your home needs like printing homework assignments, concert tickets and family photos - the PIXMA TR8520 has you covered.[11]

- Rapid document printing, copying, and scanning and a borderless 4"x6" photo in approximately 45 seconds.[12]

22.    Accordingly, two of the core and main functions of the All-in-One Printers are the

scan and fax capabilities, and Canon systematically markets and represents that the All-in-One

Printers function as scanners and fax machines under all customary and usual circumstances.

**B.    The All-in-One Printers Are Packaged And Sold To Purchasers With Scanning And Faxing Capabilities That Are Tied To The Availability Of Ink In The Devices**

23.    The All-in-One Printers do not work as warranted, labeled, and advertised.

24.    A document scanner is a device that electronically copies content from printed

pages and turns it into a computer file.

25.    Scanners operate by projecting light at a document being digitized and directing

the reflected light through a series of mirrors and lenses onto a photosensitive element.[13]  In most

scanners, this sensitive element is an electronic, light-sensing integrated circuit known as a

---

QVk5SUzRPVCZ
3aWRnZXROYW1lPXNwX2F0ZiZhY3Rpb249Y2xpY2tSZWRpcmVjdCZkb05vdExvZ0NsaWW
NrPXRydWU=

[10] *Canon TR7020 All-in-One Wireless Printer For Home Use, Black*, AMAZON, https://www.amazon.com/Canon-TR7020-Wireless-Printer-Black/dp/B08FF1JJHT/ref=sr_1_2?dchild=1&keywords=PIXMA+TR7020&qid=1633961310&sr=8-2

[11] *Canon TR8520 All-in-One Printer For Home Office*, AMAZON, https://www.amazon.com/Canon-Wireless-Printing-Document-AirPrint/dp/B074VFW3VX/ref=sr

[12] *Canon PIXMA MX330 Inkjet All-in-One Printer*, AMAZON, https://www.amazon.com/Canon-PIXMA-MX330- Inkjet-Printer/dp/B001R4C5VK

[13] *Different Types of Scanners*, ELECTRICALVOICE https://electricalvoice.com/types-of-scanner/

charged coupled device (CCD).[14]  Light-sensitive receptors arrayed along the CCD convert

levels of brightness into electronic signals that are then processed into a digital image.[15]



Fig. Working of a scanner

26.     Ink is not a necessary component to scan a document.

27.     However, the All-in-One Printers are packaged and sold to purchasers in a

manner which requires the devices to contain ink in order to scan documents.  The All-in-One

Printers do not function as scanners if the devices have low or empty ink cartridges.

28.     Ink is not a necessary component to fax a document.

29.     However, the All-in-One Printers are packaged and sold to purchasers in a

manner which requires the devices to contain ink in order to fax documents.  The All-in-One

Printers do not function as fax machines if the devices have low or empty ink cartridges.

30.     In other words, if consumers wish to use either of two of the main functions of the

device, Canon forces consumers to purchase ink cartridges whether or not they intend to use ink

or want to print documents.

31.     As a result, consumers must incur unexpected and unnecessary burden and

expense by purchasing ink cartridges, or in the alternative be unable to scan or fax documents

using the so-called multifunction, all-in-one device.

---

[14] *Id.*

[15] *Id.*

32.     Canon fails to disclose to purchasing consumers that the All-in-One Printers suffer from the Design Defect.

33.     Canon has known for years that its representations and advertisements regarding the All-in-One Printers being multifunction devices were false and misleading, and that it fails to disclose material information to consumers.

34.     For example, since at least 2015, consumers have been posting on Canon's Community webpage about their scanners not functioning when their ink cartridges are low or empty.[16]  In January of 2015, the following complaint was posted on the Canon Community webpage: "I have a MX330.  Works great otherwise but if I run out of colour ink or remove an ink cartridge it wont scan.  I'm SCANNING.  why does this affect scanning.  It shouldn't."[17]

35.     In response to the consumer's complaint, a Canon representative replied, "The printer requires that both ink cartridges be installed in the printer in order to scan, even if they are low or out of ink.  In addition, when an error condition is present on the printer (such as being out of ink), other functions of the unit will not be able to be performed until that issue is addressed."[18]

36.     The Canon Community webpage is replete with similar complaints. One consumer recently posted the following complaint:

---

[16] *Canon Community - Forums*, CANON, https://community.usa.canon.com/t5/forums/searchpage/tab/message?filter=location&q=scan+without+ink&locatio n=forum-board%3Afaxing&sort_by=-topicPostDate&collapse_discussion=true

[17] *Canon Community - Printer/Multifunction Support*, CANON, https://community.usa.canon.com/t5/PrinterMultifunction-Support/scanner-wont-work-without-all-printer-cartridges-installed/td-p/130650

[18] *Id.*

**one ink empty can't scan**

10-29-2020 04:54 PM

The gray ink has run out. There is no place locally that has any. I ordered it online. It is not here yet.
I need to scan something that will not be printed.
When I try the printer will not recognize the computer.
If I try directly on the printer it shuts itself off.
I tried holding STOP. That did nothing.
How can you scan something when the ink is out?
Wasn't there a law suit about this very thing?
Help. Is there anyway to circumvent this.
BTW, I spent a loooong time trying to get this answer from Canon directly. It was insane.

37.    Canon replied, stating that the consumer must replace the empty ink tank with a

new tank, and that "there is no workaround for this."[19]

**Patrick**
Product Expert

**Canon**
CANON U.S.A., INC.

Posts: 3,860
Registered: 07-28-2014

**Re: one ink empty can't scan**                                    Options ▾
12-02-2020 03:05 PM

Hi rivercook,

The PIXMA MG6320 must have all ink tanks installed in the printer and they must all contain ink in order to use the functions of the printer.
Replacing the empty ink tank with a new ink tank will resolve this issue.  There is no workaround for this.

38.    Canon's competitors do not all engage in this deceptive practice of designing and

selling multifunction printers that by default require ink to use the scan and fax features of a

multifunction printer.  Not all multifunction printers are designed, packaged, and sold to

consumers so that low or no ink causes a loss in scan or fax functionality.  Not all multifunction

printers are designed, packaged, and sold to consumers with the scan or fax functionality tied to

the level of ink maintained in the device.

39.    If Plaintiffs knew that Canon's All-in-One Printers had the Design Issue, they

would not have purchased the All-in-One Printers on the same terms, and would have paid less

for the All-in-One Printer, if at all.

---

[19] *Canon Community - Printer/Multifunction Support*, CANON,
https://community.usa.canon.com/t5/Printer-Multifunction-Support/one-ink-empty-can-t-scan/m-
p/323046/highlight/true#M40538 (last visited Oct. 11, 2021).

40.     Defendant's false, misleading, and deceptive representations and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

**C.     Canon's Design Of Its All-in-One Printers Produces Increased Ink Sales**

41.     There is no legitimate purpose for selling the All-in-One Printers with scanning or faxing functionality that is directly tied to existence or level of ink contained in the devices.  Ink is not needed for scanning or faxing functionality.  Ink does not improve scanning or faxing performance.  Tying the scan or fax capabilities of the All-in-One Printers to ink contained in the devices offers no benefit, and only serves to disadvantage and financially harm consumers.

42.     Tying the scan or fax capabilities of the All-in-One Printers to ink contained in the devices does, however, serve to benefit Defendant.

43.     Canon derives substantial profits from the sale of Canon printer ink cartridges.

44.     Ink cartridges for the All-in-One Printers retail for approximately $40-50.[20]  As such, the cost of ink cartridges amounts to a substantial portion of the cost of the printer housing the cartridges.[21]

45.     Charles LeCompte, head of Lyra Research, a market research firm in Newton, Massachusetts stated, "[t]he industry figured out years ago that once people buy a printer they are committed to it, so you can sell the printer at or below cost knowing they will buy the cartridges."[22]

---

[20] For example, a pack of color and black ink cartridge refills for the PIXMA TS830 costs $47.99.  *See Shop*, CANON, https://shop.usa.canon.com/shop/en/catalog/cli-281-black-cyan-magenta-yellow-4-ink-pack.  Similarly, a purchase of one black ink cartridge and one color ink cartridge compatible with the PIXMA MX452 costs $43.98.  *See Shop*, CANON, https://shop.usa.canon.com/shop/en/catalog/pixma-mx452- compatible-inks

[21] For example, the PIXMA MG2522 currently retails for $98.90.  *See* WALMART, https://www.walmart.com/ip/Canon-PIXMA-MG2522-Wired-All-in-One-Color-Inkjet-Printer/108208974

[22] Lamont Wood, *Printer ink: Tired of feeding the cash cow?*, COMPUTERWORLD (Mar 28, 2012 6:00 am PST), https://www.computerworld.com/article/2503134/printer-ink--tired-of-

46.     According to a 2018 Consumer Reports article, inkjet printers are being sold at a low cost, with the expectation that companies would make their profit through sales of the ink cartridges needed for the functioning of the machines.[23]  "Most printers are sold at a loss.  A manufacturer makes money NOT by selling consumers an inkjet or laser printer, but by selling the supplies needed to print."[24]  Wing Lam, an associate director of cost benchmarking at IHS Markit stated that "[t]his is a classic razor-and-blade business model where the manufacturer sells the goods at a low price to help increase the sales of accessories, where the money is made."[25]

47.     There is no reason or technical basis for manufacturing the All-in-One Printers with an ink level detection function that causes the scanner to stop functioning when ink is low or empty.  Canon designed the All-in-One Printers in such a way to require consumers to maintain ink in their devices regardless of whether they intend to print.  The result is an increase in ink sales from which Canon obtains significant profits.[26]

48.     The design forces consumers to incur the unexpected and unnecessary burden and expense in the form of ink purchases or in the alternative be unable to scan or fax documents using the so-called "all-in-one" device.

---

feeding-the-cash-cow-.html; *see also* Jack Houston and Irene Anna Kim, *Why printer ink is so expensive*, INSIDER (Updated Mar 2, 2021, 12:09 PM) https://www.businessinsider.com/why-printer-ink-so-expensive-2019-8 ("[C]ompanies do everything they can to keep you buying official ink cartridges[.]")

[23] Tercius Bufete, *Why Is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018) https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive-a2101590645/

[24] *Why Are Printer Ink and Toner Cartridges So Expensive?*, TONERBUZZ https://www.tonerbuzz.com/blog/why-is-printer-ink-so-expensive/

[25] Tercius Bufete, *Why Is Printer Ink So Expensive?*, CONSUMER REPORTS (September 15, 2018) https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive-a2101590645/

[26] Upon information and belief, Canon's Office and Business Printers, which retail for significantly more than the All-in-One Printers, do not suffer from the Design Defect. Additionally, Canon's laser printers allow users to scan documents without toner cartridges.

49.    Canon represents that the main functions of the All-in-One Printers include scanning and faxing documents, but fails to disclose to purchasing consumers that the All-in-One Printers suffer from the Design Defect.  Only after consumers purchase the All-in-One Printers do they learn that they must maintain ink in their devices in order to scan or fax documents, functionalities that should not require ink.

## CLASS ALLEGATIONS

50.    **Nationwide Class Definition:** Plaintiff seeks to represent a class of similarly situated individuals defined as: "all persons in the United States who purchased a Canon All-in-One Printer for personal/household use, at any time within the applicable statute of limitations" (the "Class" or "Nationwide Class").

51.    **Massachusetts Subclass Definition:** Plaintiff seeks to represent a subclass defnied as: "all Class Members who purchased a Canon All-in-One Printer for personal/household use, in the Commonwealth of Massachusetts at any time during the relevant statute of limitations period" (the "Subclass" or "Massachusetts Subclass").

52.    The Nationwide Class and Massachusetts Subclass are collectively referred to as "Classes."  Subject to additional information obtained through discovery and further investigation, the above-described Classes may be modified or narrowed as appropriate.

53.    **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this

action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

54. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** A well-defined community of interest exists in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

(a)    whether the marketing labeling and advertisements for the All-in-One Printers were false and misleading;

(b)    whether Defendant's conduct was unfair and/or deceptive; and

(c)    whether Plaintiff and the Classes sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

55. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Classes, were exposed to Defendant's false and misleading marketing, purchased the All-in-One Printers in reliance on Defendant's false and misleading representations, and suffered a loss as a result of that purchase.

56. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Classes.  Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes.  Plaintiff has raised viable common-law and statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims.

57.     **Superiority (Fed. R. Civ. P. 23(b)(3)):** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**<u>COUNT I</u>**
**Violation Of The Massachusetts Unfair and Deceptive Business Practices Act**
**Mass Gen. Laws CH. 93A *et seq.***
**(On Behalf Of The Massachusetts Subclass)**

58.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiff brings this claim individually and on behalf of members of the proposed Massachusetts Subclass against Defendant.

60.     Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business Practices Act ("MUDBPA")—prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce."  An act is "deceptive" under Chapter 93A "if it could

19

reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

61.     Pursuant to the definitions codified at Chapter 93A § 1, Defendant is a "person," and Defendant is engaged in "trade" and "commerce" in Massachusetts by offering for sale Printers that directly or indirectly affect the people of Massachusetts.

62.     By engaging in the acts and omissions alleged above and incorporated herein, Defendant has engaged and continue to engage in unfair or deceptive acts or practices in the conduct of trade or commerce.

63.     Defendant's misrepresentations deceive and have a tendency to deceive a reasonable consumer and the general public.

64.     Defendant's acts and omissions are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

65.     Plaintiff and members of the Massachusetts Subclass reasonably relied upon and were deceived by Defendant's representations and warranties that they were purchasing purportedly "All-in-One" printers with scanning and fax functionality.

66.     Defendants knowingly mispresented that the the All-in-One Printers had scanning and faxing functionality.  However, Defendant intentionally concealed and omitted material facts regarding the true nature of the All-in-One Printers, namely failing to disclose that the All-in-One Printers were designed in such a way that made them unsuitable and unusable for their intended purpose (i.e., scanning and faxing documents).

67.     Defendant also falsely represented on product packaging and in advertisements that the All-in-One Printers function as scanners and fax machines under ordinary circumstances.

68.     The foregoing deceptive acts and practices were directed at consumers.

69.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the All-in-One Printers to induce consumers to purchase the same.

70.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

71.     Defendant possessed information about the Design Defect, which was relevant to Plaintiff and Massachusetts Subclass members, but failed to disclose this information.

72.     Had Plaintiff and Massachusetts Subclass members known about the Design Defect, they would either not have purchased the All-in-One Printers, or would have paid less for them.

73.     Plaintiff and the Massachusetts Subclass Members were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the All-in-One Printers if they knew the truth about the deceptive nature of the Products or would have paid substantially less for them.

74.     Plaintiff and members of the Massachusetts Subclass have been harmed by this injury, adverse consequence, and/or loss.

75.     The MUDBPA represents a fundamental public policy of the Commonwealth of Massachusetts.

76.     For each loss, Plaintiff and each member of the Massachusetts Subclass may recover an award of actual damages or twenty-five dollars, whichever is greater.  Ch. 93A § 9(3).

77.     Because Defendant acted willfully or knowingly, Plaintiff and each member of the Massachusetts Subclass may recover up to three but not less than two times this amount.  In addition, Plaintiff may recover attorneys' fees and costs.

78.     Plaintiff and the members of the Massachusetts Subclass may also seek the

imposition of an injunction relief which limits and polices Defendants' representations within or reaching Massachusetts.  The balance of the equities favors the entry of permanent injunctive relief against Defendant.  Plaintiff, members of the Massachusetts Subclass, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant.  Plaintiff, members of the Massachusetts Subclass, and the general public lack an adequate remedy at law.  A permanent injunction against Defendant is in the public interest.  Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent injunction.

79.     In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), on August 31, 2023, Plaintiff's counsel served Defendant with written notice of its violation of Ch. 93A and a demand for relief.  A true and correct copy of the letter is attached hereto.  Defendant did not make a written tender of settlement for the putative class.

<u>**COUNT II**</u>
**Fraud**
**(On Behalf Of The Classes)**

80.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

81.     Plaintiff brings this claim individually and on behalf of members of the proposed Classes against Defendant.

82.     This claim is brought under the laws of the States of New York and Massachusetts.

83.     As alleged above, Defendant provided Plaintiff and Class members with false or misleading material information about the All-in-One Printers, mispresented that the All-in-One Printers had scanning and faxing functionality.  However, Defendant intentionally concealed and omitted material facts regarding the true nature of the All-in-One Printers, namely failing to disclose that the All-in-One Printers were designed in such a way that made them unsuitable and unusable for their intended purpose (i.e., scanning and faxing documents).

84.     These misrepresentations were made with knowledge of their misleading nature, as evidenced by representations in product packaging and advertisements that the All-in-One Printers function as scanners and fax machines under ordinary circumstances.

85.     The misrepresentations made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and Class members to purchase the All-in-One Printers.

86.     The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

<u>**COUNT III**</u>
**Breach Of Express Warranty**
**(On Behalf Of The Classes)**

87.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

88.     Plaintiff brings this claim individually and on behalf of members of the proposed Classes against Defendant.

89.     As the designer, manufacturer, marketer, distributor, and/or seller of All-in-One Printers, Defendant issued an express warranty by representing to consumers at the point of purchase that they were purportedly purchasing "All-in-One" printers with scanning and fax functionality.  Defendant's representations were part of the description of the goods and the

bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class and Subclass.

90.     In fact, the All-in-One Printers do not conform to Defendant's representations and warranties.  Defendant intentionally concealed and omitted material facts regarding the true nature of the All-in-One Printers, namely failing to disclose that the All-in-One Printers were designed in such a way that made them unsuitable and unusable for their intended purpose (i.e., scanning and faxing documents).

91.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclass were injured because they: (1) paid money for the All-in-One Printers that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the All-in-One Printers they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the All-in-One Printers did not have scanning and fax functionality under ordinary circumstances.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class and Subclass Members would not have purchased the All-in-One Printers or would not have paid as much as they did for them.

92.     On August 31, 2023, Plaintiff sent Defendant a notice and demand letter pursuant to U.C.C. §§ 2-313, 2-314, 2-607, and all other relevant state and local laws.

**COUNT IV**
**Breach Of the Implied Warranty Of Merchantability**
**(On Behalf Of The Classes)**

93.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

94.     Plaintiff brings this claim individually and on behalf of members of the proposed Classes against Defendant.

95.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, of the All-in-One Printers impliedly warranted that the Printers were fit for use as "all-in-one" devices with scanning and functionality.

96.     Defendants breached the warranty implied in the contract for the sale of the All-in-One-Printers because the Printers could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label."  *See* U.C.C. § 2-314(2) (listing requirements for merchantability).  As a result, Plaintiff and the Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

97.     Plaintiff and Class members purchased the Drives in reliance upon Defendant's skill and judgment and decades of experience in manufacturing printers and on the packaging, labeling, and marketing the Printers.

98.     The Printers were not altered by Plaintiff or Class members.

99.     The Printers were defective when they left the Defendants' exclusive control.

100.    Defendant knew that the Printers would be purchased and used without additional testing by Plaintiff and Class members.

101.    The Printers were defectively designed and unfit for their intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

102.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and the Class and Subclass members have been injured and harmed because they would not have purchased the Printers if they knew the truth about the Drives.  As received by Plaintiff

and the Class Members, the Printers do not function as "all-in-one" devices with scanning and fax functionality.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order declaring Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest in all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For an order awarding Plaintiff and the Class their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: August 31, 2023

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:＿＿＿＿*/s/ Neal J. Deckant*＿＿＿＿

Neal J. Deckant
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ndeckant@bursor.com

*Attorneys for Plaintiff*